Thank you, Mr. Green. You may proceed. Thank you, Your Honors. And may it please the Court, I'd like to start with a law case and waiver and then proceed to the statutory construction, if that's all right with the Court. This case comes down to which of two competing use categories in the Aurora zoning ordinance, AB Zoning District, applies to defendants' actual use of their property?  Well, there are two competing use categories. The first one, the plaintiff's contending applies, which is the not-for-profit use category. The other, the defense, which is the office's business and professional, including medical clinics category. And isn't there only one in the 2015 ordinance that applies here to a BB District? Well, I guess we'll go to statutory construction, Your Honor. No, Your Honor, that is not accurate. And in fact, that has been part of this litigation since day one from the ten years that we've been litigating this case. Can you keep your voice up, please? It's a very large courtroom with high ceilings and there are people in the back as well who need to hear you. There's some water there if you need it, too. Sure, I may need it, Your Honor. Okay, that's fine. And again, Your Honor, the plaintiffs have consistently contended the not-for-profit use category, which was applicable, and that not-for-profit use category has been a recognized use category throughout the Aurora Zoning Ordinance, including the BB District, since the beginning of this litigation, since the beginning of the controversy. And so it proceeds today. But the not-for-profit use category today appears only in Table 1. Isn't that correct? It does not appear in Section 8.6, which applies to BB District. It is not specifically delineated in that section. What is included there is part of the catch-all in the prohibited uses. And is it delineated as a prohibited use? Your Honor, the prohibited use category, the prohibited use section of that section of the statute, of the ordinance, is very limited in its specific delineated uses. It obviously has a much longer list of prohibited uses for all uses not expressly permitted are prohibited. The only three uses delineated there are the racing facilities, I believe there were a couple others, the gun clubs and mobile homes. So obviously that isn't the entire sweep of prohibited uses in the BB Business Boulevard District. And we would also, that's part of why we would look to the legislative history of the Aurora Zoning Ordinance. Because you can't just start in 2015 as if it's operating in a vacuum. This is an ordinance that is regularly amended. But don't we have to look, before we look at legislative history, don't we have to look at the plain language of the ordinance in 8.6? Sure. And obviously, Your Honor, what I would say, looking at the plain language, you've got a broad prohibition, a broad set of prohibited uses, and you've got a, you have a, obviously those three uses that are listed there are not the exhaustive list of the prohibited uses. Well, it doesn't say including but not limited to those three. It just says including. It is. Your Honor, but including, we've cited the case law on including. You don't need to say but not limited to in order for including to just mean including. So it's just three items that are there. And again, we respectfully contend that you've got a list of uses in Table 1, and so that is a list of uses that exist in the zoning ordinance. And again, specifically with this, the amendment that was critical, that not-for-profit use applied in the business boulevard district. It applied in every zoning district in 2006 in June. When it was amended out in December of 2006 and moved into Table 1, you can clearly see the City Council didn't intend to wipe the use off the books. No, but if you look at Table 1, we know there are 23 zoning districts. 17 are represented in Table 1. With respect to social service, charitable organizations, only 16 allow those by special use. There is no mention whatsoever of a BB district in Table 1, nor does Section So how do we then, how can you ask us to then look at this category that you're talking about that is not mentioned for BB districts? Your Honor, the reason you look at the category in the same way that adult businesses are not mentioned as a prohibited use in the BB district. Bed and breakfast aren't mentioned as a prohibited use in the BB district. There are other alternate, there was a whole list of special uses that was moved and reorganized. But the City Council could do that in December of 2006 with confidence as to the BB district because they had the catch-all there. Say, hey, if we don't include the, if we don't make a specific recitation of the use category, it's prohibited. Do I understand your argument to be that medical clinics are prohibited use only if they are for profit? And I would say that it would have to fit within that charitable organization, social service agency, health-related facilities, not operated for pecuniary profit. So the shorthand we've been using is not for profit. So if the medical clinic is for profit, it's an acceptable business. But if it is a not for profit medical clinic, then it needs a special use permit. In this particular, in the BB, it would be prohibited. In 16 of the districts, it is special use. In one district, it is expressly, it is laid out expressly as a prohibited use. What exactly is a not for profit use? I'm sorry, Your Honor? What is a not for profit use? Well, in this particular case... No, I mean, what's the definition based upon what is contained in the ordinance? What is a not for profit use? Okay, the definition of the ordinance is charitable organization, health-related facility, not operated for pecuniary profit. So, for instance, health-related facility, not operated for pecuniary profit. A charitable organization, social service agency. So, other not for profit businesses would be allowed in there. Is that your question? Well, and as I understand, and this hypothetical, I'm not exactly sure. I know the health-related facilities, not operated for pecuniary profit, are specified. You could say a charitable organization, I would imagine those should also have some sort of special treatment, but they may have a different treatment under the Table 1. I'm not sure. We're in 8.6. Do you see the word not for profit or for profit? And, Justice, I'll concede that the words not for profit and for profit are not in there. I mean, that is, it is, but what I would respectfully contend is the City Council of wipe that use category, that distinction, off of its books. Well, they were able to place it in other places pursuant to table, the table we're talking about, but for whatever reason, even if you look at the catch-all phrase, it's not mentioned. But, again, same thing. I know that bookstores are allowed, but does that mean adult bookstores are allowed? Indoor theaters are allowed. Does that mean adult theaters are allowed? Well, it's what the City gives a permit for when the time comes. It's not what they intended by their language. If they give a permit within that particular zoning category, we have to give that some credibility. And, Your Honor, I would point out, for the eight years that the City was involved in this litigation, they never once raised this argument that the two use categories didn't both apply. The City, it's their own ordinance, they didn't say the use category didn't apply. They believed that the offices, business and professional, including medical clinics, was a better category. They said the terms were more vague on the not-for-profit. That comes down to statutory construction as to which one's better, not as to one not even being in the case at all. And, again, we would respectfully contend, we've been arguing this for ten years, consistently, at every single step of this litigation. And we came before you last time, we put it in our briefs, it was argued in the briefs, we noted it had been conceded and unrefuted on appeal. The other side, when we were back in the circuit court on remand, conceded, they said yes, the appellate court assumed this to be true. So it was part of the ruling. Assumed what to be true. Assumed that both use categories could apply and that we were fighting between the two. There's no language in our prior, in this court's prior decision that indicated it made such an assumption or didn't make such an assumption. Specifically, in paragraphs 68 and 107, we indicate that we did not opine with respect to the merits counsel. And, Justice, you wrote the opinion. I can see that. I would just merely state when the parties are arguing, the plaintiffs are arguing, the defendants do not And with all due respect, we were on summary judgment. We were supposed to be sent back to do discovery and then either proceed to summary judgment again or to trial. And we get knocked out of the box with no set of facts that could be pled. You got knocked out of the box because the trial court said that what the city did was a legislative act and the disposition said that what the mayor did was not what the legislative body did because it's the trustees or the representatives of the board or whatever that decide by a vote. Right. And so I read the opinion because I wasn't on the original panel, and it is perfectly clear to me, at least, that the matter was reversed on a finding or a determination by the trial court that we determined was wrong. And in the process of suggesting that there was anything that was inconsistent with what Justice Zenoff said is not supported by either the disposition or your arguments. Your argument suggested that it was implicit in the ruling that there was some non-sequitur. The two, your argument was mutually exclusive from the disposition or the rationale for reversal. I'm not following your point, Justice. The point is that law of the case and waiver don't apply in this situation. And if the panel has decided that, then I Let's put it this way. I think the prior decision of a different panel decided that issue when it decided that the only issue that it was going to reverse on and wasn't going to determine the merits of anything else, despite the fact that I believe you and the plaintiffs asked for a determination, which the panel refused to grant or to do, would suggest that you're claiming that because the And it's not. And with respect, Your Honor, we are merely, what we're trying to do is, again, the way the case had been framed, the legislative decision versus the administrative decision was between which of these two use categories should apply more appropriately to the actual use of the property. And what if they both apply? At that point, then, we have a statutory construction issue. We would respectfully contend the more restrictive use applies. So if it's a subset, they would Why does the more restrictive use apply? The Aurora Municipal Code sections, which we had cited to the Court, and also the Aurora Zoning Ordinances, restrictive statements about restrictive use. And this is, again, Your Honor, this is not a new argument for us. It's a 10-year-old argument we've been making over and over and over again. And so this is part of why we would respectfully contend. So you're telling me that if there's an ambiguity in a zoning ordinance, it should be strictly rather than broadly? What, Your Honor? Or liberally construed in favor of the petitioner? Two use categories applying is not an ambiguity. Again, a regular bookstore and an adult bookstore both may apply to a particular use. We would know that, Your Honor, that's the way you would construct it. Well, let's put it this way. If it's not an ambiguity, what is it when the two uses overlap or two uses are consistent with what was described as the proposed use? It would be one would be a subset of the other, as we're arguing. And so you would then take the more restrictive use according to the terms of the zoning ordinance in the Aurora Municipal Code. I mean, two uses can overlap, but you would take the more restrictive use in that category. In your example, bookstore and adult bookstore, which one applies? And may I continue? Yes, please answer. The adult bookstore must apply. It's more restrictive. It would be the prohibited use. It must be the prohibited use. Otherwise, a BV zoning district, you've got adult bookstores allowable as by right. And just for instance on that particular hypothetical. I understand, Your Honors, have some hesitancy going with us on this. That's really, it's not an ambiguity to say there may be two zoning districts or zoning use categories that apply. The more restrictive will apply. You interpret that. But the city council knew how to be explicit in stating what applied in a particular district and what didn't. We see that by Table 1. There is no language whatsoever specifically prohibiting a not-for-profit use in a BB district. And indeed, the terminology medical clinics appears only in 8.6. It does not even appear in any of the uses in Table 1. So it seems that it may be a stretch to conclude as you do. Well, and again, Your Honor, we would offer that the city council did not make this a, did not make the not-for-profit use expressly a permitted use in any zoning district in the city. They've not expressed that intent. And they decided not to delineate a whole long list of prohibited uses. They did a catch-all. And so that is just the way they've constructed their business bill of art. So you're saying it comes within this catch-all. It must come within the catch-all. The prohibition comes within the catch-all. And to some extent, this zoning district has a unique history because it was part of the Fox Valley Mall. And so there had been annexation agreements. There were agreements with developers and things like that. So possibly at the time, the city council didn't feel free to amend that section directly. Well, we don't know that as part of this record, counsel. Do we? We know the Fox Valley Mall and all of the annexation agreements. Well, we know that part, but we don't. Sure. But B.B. applies there. That's the issue. Counsel, you say that this case went back, was remanded. Excuse me. And there was no discovery. There was nothing of that nature. There was a motion. Rather than file an amended complaint, which I believe was you filed a third amended and then ultimately a fourth amended, why didn't you bring some sort of an action to get discovery or to start that process over rather than file? You had an entity back there. It may not have been as alive as you had wanted, but there were other options than to filing a new salvo and going in that direction. And, Your Honor, all we did was cut out all of the complaints. And the circuit court did not want the allegations of all of the fraud and the like that this court had expressed disapproval of and said you're done with. All we did was exactly the only thing that was alive was what we replugged to merely. We had a very long complaint. Indeed. Yes, Your Honor. I was here, too. Yes, Your Honor. I know. We did nothing but pare the complaint down to merely what was allowed after, just in accord with your mandate. That's all we did. There was no change to the substance. Well, something must have happened because the third amended got dismissed. We tried a little too hard to keep some of the fraud allegations in, and we had our hands slapped for that. Any other questions? No. No. Okay. Thank you. Thank you, Your Honor. You'll have an opportunity to make your butler. Mr. Wilson, you may proceed. Thank you, Your Honor. May it please the Court, my name is Chris Wilson. I'm the counsel for the Appalese Planned Parenthood of Illinois and the related entities. Counsel, why are not-for-profit uses not prohibited by the section 8.6-4.4, as counsel argued? The section that says all uses not expressly permitted in a BB district are expressly prohibited, including, and then what he listed.  First, as you correctly noted, Table 1 that establishes this catch-all provision about social service agencies, charitable organizations, health-related facilities, and other similar uses when not operated for pecuniary profit. That section of Table 1 does not apply to business boulevard districts. So there is no catch-all prohibition of not-for-profit uses in a business boulevard district. It's just something the Aurora Zoning Ordinance does not do. It doesn't create a distinction between not-for-profit and for-profit operation. And to that point, the second reason is, looking at the list of over 100 uses that are permitted in a business boulevard district, it would create absurd results to impose this, what counsel would like to do, to impose a not-for-profit limitation. If we could look just briefly at that section, Section 8.6-4 permits reading rooms at Section YYY. According to them, a reading room operated by the Christian scientists would be prohibited, but a for-profit reading room would be permitted. Section VVV permits post offices and postal substations. Why did you say what you said? Is it inferred or implied that Christian science people don't see profits? I may be incorrect, but that was my inference. I thought that Christian scientists would say they're prohibited because they would be a not-for-profit reading room. Presuming that these people are communists of the small c, communal, so to speak? It's a good point, Your Honor. I just don't think there's a basis in the code or really in common sense for distinguishing between a for-profit reading room and a not-for-profit reading room. But a post office, I'm not aware of any. You raise a valid point, which maybe Mr. Breen might want to address, because I was trying to figure out why an ordinance would be passed that would prohibit not-for-profit or charitable uses in a business district. And I don't think, in my own opinion, it doesn't relate to the fact that those types of uses are egregious, unethical, or immoral or criminal. And based upon case law that I've read involving cities like Elmhurst and other places where they fight tooth and nail over a permitted use, they seem to be very intent on the income that is produced by businesses that sell things that then give the city a sales tax. And if there is a reason for this prohibition, I don't know what it is unless it might relate to the idea that the city is not going to profit from the use. But I'm not aware that a not-for-profit organization doesn't charge sales tax. So what is it if you know? I'm trying to come up with why is there supposed to be a reasonable exercise of the police power in differentiating and prohibiting not-for-profit uses vis-a-vis for-profit uses if I can't discern or it is not discernible what the reason for the exercise of the police power is? If I could anticipate what Mr. Breen will say on rebuttal, it is along the lines of what you talked about in maximizing tax revenue. That would be the only basis for eliminating, that I can imagine eliminating, not-for-profit organizations. But that is not described in the Aurora zoning ordinance. In fact, Section 8.6-2.1 provides the basis for the intent of a BB district. It says the intent of the business boulevard district is to combine residential, commercial, office, and industrial development in an orderly arrangement along a major street so as to maximize the commercial service benefit it offers and to minimize its harmful effects on traffic, traffic safety. But the purpose is service. We want to create a community that provides services to its residents and to non-residents and to do that in an orderly way. It specifically isn't to maximize tax revenue. Who has title to the real estate? The title to the real estate is held by Gemini Office Development, a for-profit entity. It's then leased by... For-profit entity. It's held by Gemini Office Development. It's leased by Planned Parenthood of Illinois. Then why would you apply for a real estate exemption if the property is held by a for-profit entity? Because the predominant use is not-for-profit. Well, my understanding is even if the use is an exempt use, there is a leasehold value. So I'm not sure that you're necessarily getting a total exemption. I'm not the tax lawyer who's handling any of that or arguing that. I am aware that Planned Parenthood applied for a not-for-profit exemption after the first decision. But I don't know the status of that other than that, Your Honor. Well, I bring it up because there have been two references which I consider to be legally distinguishable. One is a charitable organization and a not-for-profit organization. A charitable organization is not necessarily a not-for-profit organization. Or put another way, a charitable organization is a not-for-profit, but not all not-for-profits are charitable organizations. Correct. And so I guess maybe what I should be asking Mr. Green is, is this a charitable organization or is this not a charitable organization? And if it is, does it make any difference? I guess if it is a charitable organization, then it would be a not-for-profit as well. Correct. And the most important thing for this Court and for our consideration today is that that entire question of the charitable organization, social service agencies, is inapplicable in a business boulevard district. It's just not something you need to reach. Well, but if we look at it, I'm not sure that that's the case. If we look at Section 4.3-2 of the current 2015 Aurora Zoning Ordinance, it says that the special uses as identified in Table 1, colon, use categories, shall apply. My question is, does that provision suggest that Table 1 applies to all zoning districts? No. Does not? Why not? There's a legend across the top of Table 1 that specifically identifies the 17 of the 23 that it applies to. It does not apply to a business boulevard district. There's no listing there. And as a result, there's nothing under business boulevard. There's no table that says whether this should be a special use, a permitted use, a prohibited use. Table 1 has no application to a business boulevard district. And the reason is, if I could, just two other examples. If we were to take this not-for-profit imagination and slap it onto the business boulevard district standards, we would have, you could operate a church, but only on a for-profit basis. Section W says that churches provided with the requirements of the bulk restriction section are complied with. Now, under this reading by the plaintiffs, we could only have for-profit churches. And I've got to learn what that is, but those would be the only ones that would be permitted in a business boulevard district. Similar to the post offices, you could only have for-profit post offices. There are certainly delivery systems like FedEx and DHL, but a post office is something everyone is familiar with. It's operated by the United States government, and it's not operated, as we all know, on for-profit churches. Well, it was designed to operate on a for-profit business. It just doesn't seem to do so on regular basis. Correct. It's not met that mission. It's a constitutional mission. There are a hundred uses. One, just to counter the point that was made about adult bookstores and adult theaters, that would be, an adult bookstore would be a described use here and would be its own lengthy, I'm sure, zoning application. But that is not taking a bookstore and saying, well, an adult bookstore. Adult uses are not permitted uses here. Would it then follow that a not-for-profit adult bookstore might be available? Well, I imagine that if an adult bookstore were permitted in a business boulevard district under Mr. Breen's reading, it would only be for-profit ones and not ones operated by a social service agency or operated on a not-for-profit basis. Just looking through the list of permitted uses, there is no way to graft onto that a limitation for not-for-profit and to make it only available for-profit. There would be not-for-profit hospitals would be treated differently than for-profit hospitals. But again, doesn't that come within this catch-all section 4.4 that is part of 8.6, the all uses not expressly permitted in a BB district are expressly prohibited? I mean, that's counsel's argument. That's where it comes. It is. But what we have to recognize is under LLL, medical clinics are specifically called out, specifically referenced, and specifically permitted. But the use at that site is beyond a medical use, correct? There are other activities that go on there that aren't necessarily just medically related, are they? Do you mean counseling services or education? Right. Yes. I'm pausing because the record hasn't been developed on what all is taking place at the facility. But if those are the types of things that would be permitted at a large medical center of any type, whether it's operated by Planned Parenthood or by Advocate Health Systems, the idea of providing counseling to people, providing addiction therapy, cancer screening, health awareness for students, that's the kind of thing that could happen at any medical clinic. So there's nothing about those uses that would make them prohibited uses under the BB district. So if a barber shop that was permitted in a BB district wanted to have a charitable day where people came in and had their hair cut for a cancer organization, under counsel's interpretation, that might not be permitted? Correct. Any charitable or social service use would not be permitted. So that if you had an awareness day at a taxidermy for high school students, a taxidermist would be permitted, but that type of not-for-profit presentation would not be permitted. It would put handcuffs on the entire city of Aurora in a way that's clearly not intended by the code. And that was the process that Judge Fullerton and the circuit court went through in determining once the case was sent back on remand, what are we talking about? What is the dispute? And Mr. Breen's correct that for 10 years they have had as part of their allegations that there should be a not-for-profit and for-profit distinction in medical clinics. But they had dozens of other claims. They had claims about landscaping, about parking, about setback, about fraud in the application process, in a white envelope process. And what this court did on remand was narrow this to a specific issue. And that's what we then looked at. And, Justice, you referenced paragraph 107. That's where you said, We emphasize that we express no opinion on the merits of plaintiff's claim that Planned Parenthood's ongoing use of the property violates the Aurora Zoning Ordinance, even though plaintiffs maintain that this court should make that determination. Given the procedural posture of this case, it would be premature for this court to do so. We simply hold that it was error for the trial court to grant summary judgment in favor of the Planned Parenthood defendants on plaintiff's claim that Planned Parenthood's ongoing use of the property violates the Aurora Zoning Ordinance. The Planned Parenthood defendants were not entitled to judgment as a matter of law on this claim on the basis that the city made a legislative decision. So all that was determined on the first appeal, in addition to getting rid of all those other issues, whether or not the Building Code Board of Appeals should be a party, whether or not the Zoning Board of Appeals should be a party, whether or not the city of Aurora should be a party, whether or not there were problems with landscaping, parking, setback. The only issue that was remanded was, Is there an ongoing violation? If I could complete my thought. And when the court looked at and asked the plaintiffs to identify, What is your ongoing violation? What are you alleging to this court is being violated by the operation of the Planned Parenthood Medical Clinic? The only question was this not-for-profit versus for-profit. And the conclusion of the court, correctly, was that Table 1 does not apply and that if for some reason you did apply Table 1, you would lead to these absurd results of having libraries, post offices, churches, operating reading rooms operated on a for-profit versus not-for-profit basis. Medical clinics are permitted. Medical clinics operated on any basis, for-profit or not-for-profit, are permitted under the ordinance, and therefore there can be no ongoing violation. Mr. Wilson, you indicated in your presentation just a moment ago that this record hasn't been developed. You were pausing a bit because the record hasn't been developed. What is it going to take to develop this record? Well, step one would be to identify a potential violation as a matter of law, because that doesn't exist. So we don't have discovery on complaints where there is no. If I come in and say I want to assert a tort of someone who's mean to me, let's say, okay, well, I'm not sure that violates the law or not, but let's have full discovery on what happened. First you have to identify that you have a cause of action as a matter of law, and plaintiffs simply can't do that. And so the only remaining issue here is whether profit or not-for-profit is specific to this district. Well, if this court determines that there is a not-for-profit limitation and that there may be circumstances under which a not-for-profit organization could not operate a medical clinic, then we would have discovery on the kinds of questions you were asking. Well, how much not-for-profit are we operating, and is that the type that Aurora would prohibit? What use predominates. Which use predominates. Also, what other types of, has the city of Aurora permitted other not-for-profits in business boulevard districts, and why would they discriminate against Planned Parenthood? Clearly they're not. Clearly this is fine with the city of Aurora. They have made a decision to permit Planned Parenthood and to not allow them to continue. So we know that their interpretation is consistent with the court below. How would you characterize their decision? We, as a court, decided that it wasn't legislative, so what was their decision? Was it quasi-judicial or what? That's a great point, Justice. The decision on the first round was, was this a legislative decision that was subject to the very highest standard of review, and therefore all of these other questions about fraud and white envelope issues were outside the purview of consideration. What would be under consideration now is, well, how is Aurora applying the ordinance? And what I was, the point I was trying to make is, we know what the city of Aurora's view of this is, which is Planned Parenthood should be continuing to operate. The allegation is, this is a Municipal Code 11-13-15 case saying, oh, well, you're slow or reluctant to act to enforce your own ordinance. But it's unusual that you have a question of interpretation. Usually it's, there's a violation of an easement that you are not acting on. I have one. Does the city's lack of notice of violation constitute their, you're saying it constitutes their agreement that you're operating properly? Well, and I don't want to get beyond ourselves. I think that's strong. So if we were to go back and develop a, if you were determined that table one applies somehow and that we need to now look at the question of whether or not a for-profit or not-for-profit distinction needs to be made and whether or not that constitutes a violation, our argument, and as accepted by the circuit court, was there is no such distinction. But if there is a distinction, that would be one of the things we would develop in the record, and two of the things we would want to develop are, one, whether or not for-profit uses are being permitted in both of our districts, and second, isn't the fact that Aurora has permitted this for 10 years strong evidence of its view of it, the proper interpretation of Section BB? Going back for just a moment to your discussion of the intent and purpose of a BB district as expressed in 8.6-2, you read some of the language and part of it was the intent is to combine residential, commercial, et cetera, and an orderly arrangement along a major street so as to maximize the commercial service benefit it offers. As I understood, at least, the thrust that you wanted us to understand, I heard it implicit there was a comma between commercial and service, but there is not. So it seems to me the thrust of it really is commercial rather than service as in a social service organization. Correct? So you agree there's no comma between commercial and service here, commercial service benefit it offers. I agree that that's a particular phrase, commercial service benefit. But my point was anticipating something that Mr. Breen has stated in the quote below, that the purpose of a business boulevard district is to maximize for-profit revenue, and that therefore it makes sense that we would bar not-for-profits. And I wanted to draw the Court's attention to the intent paragraph, which maximizes commercial, yes, but service benefit. It makes no reference to tax revenues or to revenue to the community, and it really talks more about beauty, traffic flow, and the design of the community rather than its tax base. Okay. Thank you. Thank you. Mr. Breen, you may proceed. Thank you, Your Honors. And just to, I think my list of questions for me has already been laid out. Number one, just as a point of clarification, the City's decision, well, I wish the Court would remember that this not-for-profit use is a special use in 17 expressly provided zoning districts. The City regularly has to read that, as against other allegedly overlapping or otherwise conflicting use categories. The City is already having to do that on a daily basis. And the decision of the City was not that this doesn't apply here, but that it was more vague than the office's business professional use category. We respectfully contend that was an error of law. I'm sorry, I didn't hear, with the train whistle here, I didn't hear the last part of your sentence. We respectfully contend that's an error of law made by the City in an administrative decision that it made many years ago. But again, that is, we're to some extent jumping ahead. Hey, how do we interpret these two together? Well, this is part of the statutory interpretation, the construction. You look at the facts of the actual use and then try to fit them into which category fits. Again, we're going to contend the more restrictive fits that is required under the ordinance. Another point that has been made, another note to be made is, you know, if the court finds, so this is a preliminary matter, if the court finds that there are no other potentially applicable uses in the BB district that are prohibited, the court will be finding that those three uses that are listed are the only three prohibited uses. And just in counsel's recitation of possible uses, I mentioned hospitals. Well, I don't believe hospitals is on the list of permitted uses. Is it not prohibited that you can just pop a hospital up wherever you like, buy it right, in the business boulevard district? It's just one of them that popped up there. You know, there are six, approximately six zoning districts where the table apparently doesn't apply. If there was just the BB district, wouldn't your argument have maybe more legs, so to speak? But they made a decision in five additional districts, according to the record, to not apply this table to six total. It's not like they forgot. Well, as I understand it, those are different sorts of districts. And I don't think we can assume that the city council forgot at all. We have to assume that they, again, might. Well, then was it an error of law in all the other districts as well? I mean, I don't know how you're getting to an error of law. Well, the error of law is to apply the offices of business and professional as against the not-for-profit, the health-related facilities not-for-pecuniary profit, on the statement that health-related facilities not-for-pecuniary profit is vague, that the terms of that use category are vague. That was the ruling of Mr. Lutkehan's, the attorney ruling. And that ruling is not what the circuit court ruled. That's not what the defendants are contending for. So it is an entirely different ruling. And, again, if the city of Aurora didn't recognize, didn't say that health-related facilities not-for-pecuniary profit were not some sort of a prohibited use or specialty use in this zoning district, that wasn't their contention, that this is a unique contention, it's a new one that was raised after the remand here. The court had had various statements all worldwide, what's the rational basis here, what have you. We had cited to the court on page 6 of our reply brief, the Wisconsin Community Services v. City of Milwaukee case of the 7th Circuit, where the federal court specifically upheld a prohibition on a not-for-profit health clinic at a location in view of the city's interest in commercial taxpaying businesses at that site. And, in fact, here, very specifically, where the circuit court had initially been told they were operating as a for-profit property taxes were being paid, the final judgment's issued, and immediately they're to the Board of Review to get that thing reversed, get the property tax exemption. They even got three years of refund from the taxing bodies in Aurora and DuPage County, the back taxes, which is as far as they could go. But in order to get the funds that they used to build the facility or to develop the facility, they had applied not-for-profit status or identified not-for-profit status. State bonds. Yeah, state bonds. So they got state bonds through the Illinois Finance Authority that required them to operate exclusively for their charitable purposes in 501c3. But, again, so the property taxes are an issue. Frankly, locating services for the poor could be a rational basis for a community to state, to determine where they would put a not-for-profit health facility, not operating for community profit. May I get just a brief additional time instead? Any other questions? I don't have any questions. I don't, so we've got another case on the court call. The court will take a recess and be back on the bench for the other case. Court is adjourned.